

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Everett H. Cain
County Attorney, Chambers County
Anahuac, Texas

Dear Mr. Cain:

Opinion No. 0-7045
Re: Does the Chambers-Liberty
Counties Navigation District
have the authority to finance
and construct a belt railroad
running from the City of Liberty
southward a distance of approx-
imately twelve miles to Moss
Bluff?

We acknowledge receipt of your opinion request of recent date,
and quote from your letter as follows:

"The Chambers-Liberty Counties Navigation District
has filed an application with the Bureau of Community
Facilities of the Federal Works Agency for funds with
which to plan the construction of a belt railroad running
from the City of Liberty southward a distance of approx-
imately twelve miles to Moss Bluff.

"The proposed belt railroad will be situated wholly
within this District and will run roughly parallel to the
Trinity River. The railroad is an integral part of the
District's overall plan for the development of the lower
section of the Trinity River and a part of Trinity Bay
and Galveston Bay for navigation purposes. It is also
a necessary part of the District's plan to develop the
territory along the river and on the bayshore for in-
dustrial and commercial purposes. The road will first
be used primarily to haul sulphur from a new sulphur
mine being developed at Moss Bluff, but it is anticipated
that rice, cattle and petroleum products in the area will
also be transported to connect with the Southern Pacific
Lines at Liberty.

"The Federal Works Agency has requested the District
to secure an opinion from you as to the District's legal
authority to finance and construct this belt railroad.
A copy of the Federal Works Agency's letter is attached.

Hon. Everett H. Cain - Page 2

"The District was organized under Articles 8263h, 8247a
and 8247d of Vernon's Annotated Texas Statutes, and the
creation of the District has heretofore been approved by
your Department in connection with the issuance of $100,000
Navigation Aid Bonds early in 1945.

"The District is specifically authorized by Section 1
of Article 8247a to acquire, purchase, construct and operate
'...belt railroads....., and everything appurtenant thereto,
together with all other facilities or aids incident to or
useful in the operation or development of the District's
ports and waterways or in aid of navigation and commerce
thereon....'  The District proposes to issue revenue bonds
under that statute for the purpose of financing the con-
struction of the belt line.  ***"

The copy of the Federal Works Agency's letter, which you stated
was attached to your request, was never received by this office.

Article 8247a, Vernon's Annotated Civil Statutes, provides in
part as follows:

"Sec. 1.  Any navigation district heretofore organized
or hereafter to be organized under any of the provisions
of the Constitution or laws of the State of Texas, in
addition to all other powers conferred by law is hereby
given authority and shall hereafter have power in the
manner hereinafter provided to acquire, purchase, construct,
enlarge, extend, repair, maintain, operate or develop wharves,
docks, warehouses, grain elevators, bunkering facilities, belt
railroads, floating plants, and facilities, lightering facilities
and towing facilities, and everything appurtenant thereto, to-
gether with all other facilities or aids incident to or useful
in the operation or development of the district's ports and
waterways or in aid of navigation and commerce thereon.

***

"Sec. 3.  The Board of Navigation and Canal Commissioners
of any such navigation district may borrow money from the
Federal Emergency Administration of Public Works of the
United States, or from any other department or agency of the
United States, or from any other source, and in evidence thereof
issue the notes, warrants, certificates of indebtedness or other
forms of obligation of such district payable solely out of the
revenues to be derived from said improvements and facilities,
for the purpose of obtaining funds to acquire, purchase, construct,
enlarge, extend, repair, maintain, operate or develop wharves,
docks, warehouses, grain elevators, bunkering facilities, belt
railroads, floating plants and facilities, lightering facilities,

Hon. Everett H. Cain - page 3

towing facilities, and everything appurtenant thereto, together with all other facilities or aids incident to or useful in the operation or development of the district's ports and waterways or in aid of navigation and commerce therein.

"Sec. 4. Each issue of obligations authorized hereunder shall constitute a separate series and shall be appropriately designated. Such obligations shall not constitute an indebtedness or pledge of the credit of such district, shall never be paid in whole or in part out of any funds raised or to be raised by taxation, and shall contain a recital to that effect."

"Sec. 5. Any obligations issued hereunder may be issued payable from and secured by the pledge of all the revenues derived from the operation of the improvements and facilities of the district, exclusive of any revenues derived from taxation or assessments, or may be payable from and secured by the pledge of only such revenues as may be derived from the operation of the improvements and facilities acquired with the proceeds of the sale of such obligations, or may be payable from and secured by the pledge of a specified part of the revenues derived from the operation of the improvements and facilities of the district, all as may be provided in the proceedings authorizing the issuance of such obligations. ***

"Sec.17. This Act shall be construed as cumulative authority for the accomplishment of the purposes herein mentioned and is not to be construed to repeal any existing laws on the same subject matter, it being the purpose and intent hereof to create an additional and alternate method for the accomplishment of such purposes. This Act, without reference to other statutes of the State of Texas, shall constitute full authority for the authorization and issuance of obligations hereunder and for the accomplishment of all things herein authorized to be done, and no proceedings relating to the authorization or issuance of such obligation or the doing of such things shall be necessary except such as are herein required, and neither the Bond and Warrant Law of 1931 or any other provisions of the laws of the State of Texas pertinent to the authorization or issuance of obligations, the operation and maintenance of ports, canals and water way, the granting of franchises or permits, the right to elections or referendum petitions, or in anywise impeding or restricting the carrying out of the acts authorized to be done hereunder or acts done pursuant thereto.****"

We note that Article 8247a authorizes navigation districts to acquire, purchase, and construct certain facilities without taxation and to secure funds for such purpose by the issuance of obligations of the district payable solely from the revenues to be derived from the improvements and facilities of such district.

We also note that the act does not specifically authorize the issuance of the bonds. It is well settled in this State that counties, municipal corporations, and political subdivisions cannot issue negotiable bonds unless such power is expressly conferred by law. Mere power to borrow money carries with it no authority to issue negotiable bonds therefor. 34 Texas Jurisprudence 639; Robertson v. Breedlove, 61 Texas 316; Lasater v. Lopez, 217 S. W. 376;

However, we do not believe that the type obligation authorized here is a negotiable instrument. We quote from Jones on "Bonds and Bond Securities", Vol. 1, Section 289, page 302:

"Since the status of municipal bonds as negotiable securities is to be determined by the provisions of the Uniform Negotiable Instruments Law, it follows, as of course, that they must contain the essentials designated by that law, and since the uniform act is but, in the main, a codification of the law merchant, such bonds must therefore contain the essentials of a negotiable instrument as understood at common law. This includes an unconditional promise to pay a sum certain in money. If they are made payable only upon a contingency which may never occur, a condition is thereby injected into the promise, making the ultimate payment problematical, thus destroying the unconditional character of the agreement to pay at all events, and, at the same time, destroying the negotiability of the instruments. Such a situation is demonstrated where the bonds are made payable solely out of a special fund to be derived from designated sources, which sources may dry up before they have yielded the proceeds necessary to liquidate their amount in full. Here the preponderance of judicial thought has arrived at the conclusion that such an arrangement, though creating a probability that the promised payment will be made in full, still leaves a possibility that it may not be, and this possibility leaves the promise itself uncertain and, therefore, not unconditional. The negotiability of such bonds is not saved by the fact that they are made payable to bearer."

Hon. Everett H. Cain - Page 5

In view of the foregoing, you are advised that in our opinion the Chambers-Liberty Counties Navigation District has authority under Article 8247a to issue obligations called "revenue bonds" for the purpose of financing the construction of a belt railroad.

Trusting this answers your questions, we are

Very truly yours,

ATTORNEY GENERAL OF TEXAS

BY: _____

Claud O. Boothman
Assistant

COB:V

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN